**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**WILLIAM KANUPP,**

                  **Plaintiff,**

**-vs-**                              **Case No. 6:06-CV-1787-ORL-31KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

                  **Defendant.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by William Kanupp, seeking review of the final decision of the Commissioner of Social Security denying his claim for social security benefits. Doc. No. 1. The Commissioner answered the Complaint and filed a certified copy of the record before the Social Security Administration (SSA). Doc. No. 10.

**I.     PROCEDURAL HISTORY.**

In January 2002, Kanupp applied for disability benefits under the Federal Old Age, Survivors and Disability Insurance Programs (OASDI), 42 U.S.C. § 401 *et seq*., and under the Supplemental Security Income for the Aged, Blind and Disabled Program (SSI), 42 U.S.C. § 1381, *et seq*. (sometimes collectively referred to herein as the Act).

R. 59-61.[1] He alleged that he became disabled on April 1, 2001. *Id.* Kanupp's applications were denied initially and on reconsideration. R. 45-46, 49-50.

Kanupp requested a hearing before an administrative law judge (ALJ). R. 51. An ALJ held a hearing on March 3, 2004. Kanupp, represented by an attorney, testified at the hearing. R. 203-13.

After considering the testimony and the medical evidence presented, the ALJ determined that Kanupp was insured under OASDI through June 15, 2004, the date of the ALJ's decision. R. 32-33. The ALJ found that Kanupp had not engaged in substantial gainful activity since the alleged onset date of his disability. R. 32.

The ALJ concluded that the medical evidence showed that Kanupp had right foot drop and degenerative disc disease of the lumbar spine, which were severe. These impairments did not meet or equal any of the impairments listed in the applicable social security regulations (the Listings).[2] R. 27. The ALJ did not address the applicability of any specific Listing, even though counsel for Kanupp argued at the hearing that Kanupp's condition met or equaled Listing 1.04. R. 205.

The ALJ found that Kanupp could not perform heavy lifting or more than occasional climbing, stooping, kneeling, crouching and crawling. He concluded in

---

[1] The SSI application is not included in the transcript provided to the Court. *See* R. 4.

[2] The Code of Federal Regulations "contains a Listing of Impairments specifying almost every sort of medical problem ('impairment') from which a person can suffer, sorted into general categories." *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278 (11th Cir. 2004); 20 C.F.R. Part 404, Subpt. P, App. 1.

reliance on Social Security Rule 85-15 that, despite these functional limitations, Kanupp had the residual functional capacity (RFC) to perform a wide range of sedentary work. R. 27, 31-32.  In reaching this conclusion, the ALJ gave little weight to a treating doctor, who he did not identify, who opined that Kanupp could not perform even sedentary work. The ALJ rejected this opinion because it was "an opinion on an issue that exceeds the expertise of the physician and is reserved to the Commissioner," further noting that "a treating physician's opinion, while part of the record and must be considered, is not entitled to controlling weight or special significance."  R. 30.  The ALJ also found Kanupp's testimony about the limitations arising from his impairments was not totally credible. R. 32.

The ALJ concluded that Kanupp could return to his past relevant work as a campus advisor, which required sitting for 4 to 6 hours and standing or walking for 1 to 2 hours.  R. 30.[3]  Alternatively, the ALJ found that, assuming Kanupp could not perform any of his past relevant work, the Medical-Vocational Guidelines (the Grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, directed that Kanupp would not be disabled.  R. 30-31. Therefore, the ALJ concluded that Kanupp was not disabled.  R. 31.

Kanupp requested review of the ALJ's decision. R. 10.  On September 6, 2006, the Appeals Council issued a decision finding no basis to review the ALJ's decision.  R. 5-7. Kanupp timely sought review of this decision by this Court.  Doc. No. 1.

---

[3] The summary of the ALJ's findings incorrectly indicates that the ALJ found that Kanupp was unable to perform any of his past relevant work.  R. 32.

## II. JURISDICTION.

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Kanupp's request for review. *See Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998); 20 C.F.R. §§ 404.981, 416.1481. Therefore, the Court has jurisdiction pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).

## III. STATEMENT OF FACTS.

The facts contained in the record are set forth in detail in the ALJ's decision and the parties' memorandum. To protect Kanupp's privacy, I will only summarize pertinent portions of the record in this report.

Kanupp was 27 years old on the date he alleges he became disabled. R. 206. He had had several surgeries for degenerative disc disease of his spine starting in 1991. R. 116, 120, 208. Beginning in 1995, he worked as a campus advisor for about 2 years. R. 209. In that job, he had to walk or stand 1 to 2 hours and sit 4 to 6 hours. R. 85. He left that job because it required too much walking. R. 209-10.

In November 2000, Kanupp strained his back while lifting, resulting in back pain radiating down his right leg. R. 64, 107-08. X-rays revealed mild to moderate degenerative changes in his lumbar and sacral spine with herniated discs and severe spinal narrowing (stenosis). R. 108-10. In April 2001, Stephane Lavoie, M.D., performed a laminotomy and decompression surgery. R. 113.

After the surgery, Kanupp's back pain was relieved, but he experienced tingling and numbness in his right ankle and foot, with right drop foot.[4]  R. 118.  On April 13, 2001, Dr. Lavoie permitted Kanupp to return to some light duty clerical work.  R. 161.  On April 25, Kanupp reported that he was still experiencing tingling and burning in his foot. R. 160.

John Jenkins, M.D., treated Kanupp from May through October 2001.  R. 140-46. Dr. Jenkins wrote on May 23, 2001, that Kanupp had a complete right foot drop, with burning pain and parasthesias, dysthetic[5] in nature, in the entire right leg below the knee. He walked using a walker.  R. 144, 146; *see also* R. 118.  He had minimal back pain but significant right leg pain.  R. 145.  Dr. Jenkins could not elicit reflexes in Kanupp's right knee or ankle.  R. 144.  An MRI revealed adhesive arachnoiditis[6], herniated discs and spinal narrowing in Kanupp's lumbar spine.  R. 143.  On July 6, 2001, Dr. Jenkins opined that additional surgery was unlikely to benefit Kanupp, and that it was "quite doubtful" that Kanupp would have a significant return of function in his right foot.  R. 142-

---

[4] "A condition in which the toes drag and foot hangs, caused by paralysis or injury."  Doc. No. 14 at 6 n.5.

[5] Dysthesia is "[a]n unpleasant, abnormal sensation, often described as burning or crawling."  The National Pain Foundation, *Mayo Clinic Glossary,* http://www.nationalpainfoundation.org/MyTreatment/MayoClinic_glossary.asp (last visited December 28, 2007).

[6] "Arachnoiditis is a debilitating condition characterized by severe stinging and burning pain and neurologic problems.  It is caused by an inflammation of the arachnoid lining – one of the 3 linings that surround the brain and spinal cord.  This inflammation causes constant irritation, scarring, and binding of nerve roots and blood vessels.  The predominant symptom of arachnoiditis is chronic and persistent pain in the lower back, lower limbs or, in severe cases, throughout the entire body.  http://www.spineuniverse.com/displayarticle.php/article180.html."  Doc. No. 14 at 7 n.7.

43. He directed Kanupp to have an orthotic (AFO) refitted. R. 141. As of October 2001, Dr. Jenkins opined that Kanupp's right foot drop was permanent. R. 140.

G. Grady McBride, M.D., an orthopaedic surgeon, evaluated Kanupp in July 2001. At that time, Kanupp indicated that he had occasional discomfort in his back and right leg. His most significant problem, however, was the right drop foot. R. 120. Dr. McBride observed that Kanupp walked with an antalgic gait with obvious weakness in the right foot. R. 121. Dr. McBride noted that imaging tests performed after the April 2001 surgery still revealed disc herniation, spinal narrowing and aggravation of the nerve roots in the lumbar spinal canal. R. 122-23; *see also* R. 150-57. He concluded that arachnoiditis was present. R. 123. Dr. McBride directed that Kanupp remain off work at that time. R. 123.

Thereafter, Kanupp underwent a program of physical therapy. R. 125-35. The treatment notes reflect that Kanupp continued to complain of numbness in his right foot, and he had difficulty walking with or without his orthotic device, but he had no back pain. *See, e.g.,* R. 127.

Electrodiagnostic studies performed in August 2001 were positive for "an ongoing, active very severe right L5-S1 radiculopathy with the most significant findings noted to involve the right L5 nerve root." R. 138.

Dr. Lavoie examined Kanupp again in November 2001. At that time, Kanupp continued to have complete weakness in the right foot, but little pain. He fell frequently when attempting to walk in his house without his brace. Dr. Lavoie concluded that Kanupp's condition was unlikely to improve. Dr. Lavoie gave Kanupp a 26% impairment

rating for purposes of worker's compensation.  The doctor limited Kanupp to clerical work because Kanupp risked falling in any other type of work.  R. 158-59.

Marc E. Harr, M.D., performed an independent medical examination of Kanupp on June 24, 2002.  R. 169-73.  At that time, Kanupp complained of intermittent pain at night radiating to his right knee.  He continued to have numbness in his right foot, with burning, coldness and tingling.  He walked with a "slap foot," that was somewhat corrected when he used his orthotic.  R. 170.  Upon examination, Dr. Harr observed that Kanupp had normal range of motion in his lumbar spine.  He had decreased sensation in his lower right extremity with no muscle strength.  R. 171.  Dr. Harr's impression was that Kanupp suffered from failed back syndrome, and lumbosacral radiculopathy in his right lower extremity with dropped foot.  R. 173.  He concluded that Kanupp had reached maximum medical improvement, with a 35% partial permanent impairment for worker's compensation purposes.  R. 173.

On July 22, 2003, Frank S. Alvarez, Jr., M.D., a neurologist, examined Kanupp.  R. 179-84.  At that time, Kanupp was not having much back pain, and the pain he did experience was relieved by the use of Aleve.  R. 183.  He continued to have numbness from his right leg to his right foot.  R. 183-84.  Upon examination, Dr. Alvarez confirmed that Kanupp had markedly decreased sensation and perception of movement in his right leg and foot.  R. 182. Dr. Alvarez observed that Kanupp's condition was consistent with the findings made by Dr. Harr.  R. 180.  He opined that Kanupp could not stand more than 10 minutes, and that he could not stand at all without a leg brace.  He could walk only with the use of an aid.  He could not sit more than 2 hours without changes in

position. R. 178.

At the time of the hearing, Kanupp was no longer under the care of a physician because there was no more that could be done for his foot. R. 212. He estimated that he could lift between 10 and 15 pounds. He could stand for 20 to 25 minutes and walk for 30 minutes. He could sit for 1 1/4 hours with frequent changes in position, which were necessary because his leg would become numb. R. 210-11. In a typical day, Kanupp watched television and walked outside a little. R. 208. He drove a car when necessary. R. 209. He did most of his own cooking, cleaning and laundry, although friends sometimes helped him with these chores. R. 208-09.

## IV.    STANDARD OF REVIEW.

To be entitled to disability benefits under OASDI or SSI, a claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" under the terms of the Act is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); 42 U.S.C. § 1382c(a)(3)(D). In a case seeking disability benefits under OASDI, the claimant also must show that he or she became disabled before his or her insured status expired in order to be entitled to disability benefits. 42 U.S.C. § 423(c)(1); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).

Pursuant to 42 U.S.C. § 405(a), the SSA has promulgated a five-step inquiry that must be followed in determining whether a claimant is entitled to benefits. In sum, an ALJ must apply the following criteria, in sequence:

> (1) Is the claimant presently unemployed?
>
> (2) Is the claimant's impairment severe?
>
> (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
>
> (4) Is the claimant unable to perform his or her former occupation?
>
> (5) Is the claimant unable to perform any other work within the economy?

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). An affirmative answer to any of the above questions leads to either the next question, or, on steps three and five, to a finding of disability. A negative answer leads to a finding of "not disabled." *See, e.g.*, *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1987).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)). However, "the burden temporarily shifts at step five to the Commissioner[,] . . . [who] must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform." *Id*. at 1278 n.2 (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).

A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d

1206, 1210 (11th Cir. 2005), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

The SSA's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer*, 395 F.3d at 1210. "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982)(internal quotations omitted).

The court "must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [SSA's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Where the SSA's decision is supported by substantial evidence, the court will affirm, even if the court finds that the proof preponderates against the decision. *Dyer*, 395 F.3d at 1210. The court may not reweigh the evidence or substitute its own judgment. *Id*.

While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusion about the proper standards to be applied in evaluating claims. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). Therefore, the court will reverse if the SSA incorrectly applied the law, or if the decision fails to provide the court with sufficient reasoning to determine that the SSA properly applied the law. *Keeton v. Dep't of Health & Human Serv's*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991)).

When reviewing a final decision issued by the SSA, the court is authorized to "enter . . . a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## V. ANALYSIS.

Kanupp asserts three grounds supporting reversal. He contends that his condition met or equaled Listing 1.04B. Alternatively, he asserts that the ALJ erred as a matter of law in the application of the pain standard and in his treatment of the opinion of a treating physician. Finally, he submits that at step five of the sequential evaluation the ALJ erred by relying exclusively on the Grids because Kanupp had nonexertional impairments. These are the only issues I will address.[7]

### A. Listing 1.04B.

Listing 1.04 B provides as follows:

*Disorders of the spine* (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) of the spinal cord. With:

. . .

B.   Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours . . . .

20 C.F.R. pt. 404, subpt. P, App. 1 § 1.04. "When a claimant contends that he has an impairment meeting the listed impairments, the burden is on the claimant to present specific medical findings that meet the various tests listed under the description of the

---

[7] The parties were advised that issues not specifically raised would be waived. Doc. No. 11.

applicable impairment . . . ." *Wilkinson o/b/o Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).

The record reflects that Kanupp has a qualifying disorder of the spine and that he has spinal arachnoiditis. However, as the Commissioner argues, the record does not establish that this condition was "manifested by severe burning or painful dysesthesia." Shortly after his surgery, Kanupp complained of significant right leg pain that Dr. Jenkins characterized as dysthetic in nature. Thereafter, Kanupp consistently indicated that he was not experiencing significant pain, and he no longer complained of burning or painful dysthesia. Accordingly, substantial evidence supports the ALJ's conclusion that Kanupp's condition did not meet Listing 1.04(B).

   B.   *Application of the Pain Standard.*

To evaluate allegations of pain and other subjective symptoms, the ALJ must apply the pain standard, which "'requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Id.* at 1561-62.

In the present case, the ALJ articulated reasons supported by the record for discounting Kanupp's complaints of pain. However, he did not articulate adequate reasons, supported by the record, for discounting Kanupp's testimony about the numbness in his right leg and foot, which he testified limited his ability to walk and

required that he frequently shift positions when seated.

The ALJ relied heavily on a statement by Dr. McBride that Kanupp could heel/toe walk without any motor disturbance, citing to exhibit B-4F.  R. 28; *see also* R. 29.  However, close examination of Dr. McBride's report reveals that while Kanupp did not display motor disturbance, Dr. McBride noted that Kanupp was "not able to heel or toe walk secondary to complaints of weakness in the right lower extremity."  R. 121.

The ALJ also wrote that "recent physical and neurological findings consistently do not show evidence of any significant muscle weakness or nerve damage."  R. 29.  However, Dr. Harr observed in June 2002 that Kanupp had "total loss of muscle strength in demonstrating ankle dorsiflexion as well as plantar flexion as well as dorsiflexion and plantar flexion of the toes on the right side" and atrophy of the right lower leg.  R. 171.  He also opined that Kanupp had lumbar radiculopathy, which is a disease of the spinal nerves.  After review of medical records and upon examining Kanupp, Dr. Alvarez noted in July 2003 that Kanupp's condition suggested "progressive injury to the nerves . . . ."  R. 180.

Because the ALJ failed to articulate explicit and adequate reasons for rejecting Kanupp's testimony about the functional limitations arising from his right drop foot, remand is required for reevaluation of Kanupp's functional capacity.[8]

If the ALJ concludes on remand that Kanupp has nonexertional limitations on his residual functional capacity, such as limitations on postural activities, that preclude his return to his past relevant work, the ALJ should seek evidence from a vocational expert to

---

[8] On remand, the ALJ should take care to apply the correct law regarding the weight to be given to the opinion of a treating physician.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

determine whether there is work available in the national economy that Kanupp can perform. *See, e.g., Bouie v. Astrue*, 226 Fed. Appx. 892, 894 (11th Cir. 2007)("VE testimony is the preferred method for introducing independent evidence of the existence of jobs in the national economy that the claimant can perform."). I note that the ALJ's reliance on Social Security Rule 85-15 is insufficient in this regard because that ruling applies to claimants who have *only* nonexertional impairments, while the ALJ concludes that Kanupp has both exertional and nonexertional impairments. *See Williams v. Halter*, 135 F. Supp. 2d 1225, 1239 (M.D. Fla. 2001).

**VI.   RECOMMENDATION.**

For the reasons stated herein, I respectfully recommend that the decision of the Commissioner be **REVERSED** and that this case be **REMANDED** for further proceedings consistent with the Report and Recommendation. I further recommend that the Court direct the Clerk of Court to enter judgment consistent with its decision on this Report and Recommendation and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within **ten (10) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended this 31st day of December, 2007.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies to:
Presiding District Judge and Courtroom Deputy Clerk
Counsel of Record